## COLLIN & GISSEL (LUDWIG BAER) v. UNITED STATES

No. 4580.—Invoice dated Leipzig, Germany, July 6, 1934.
Certified July 11, 1934.
Entered at Houston, Tex., August 10, 1934.
Entry No. 102–H.

(Decided May 24, 1939)

*Eugene R. Pickrell* for the plaintiffs.
*Webster J. Oliver,* Assistant Attorney General (*Dorothy C. Bennett* and *Joseph E. Weil,* special attorneys), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of a certain barrel cleaning or washing machine imported from Germany and entered at Houston, Tex., a subport of the port of Galveston, on August 10, 1934. The machine was entered at the invoice price of $3,300 and was appraised at 12,511.30 reichsmarks on the basis of the cost of production.

At the first hearing, held at New York on February 25, 1938, before Tilson, Judge, Ludwig Baer, the ultimate consignee and the importer of said merchandise, testified that he was engaged in the business of importing automatic keg and barrel washing machines which he sold throughout the United States; that he purchased the particular machine involved herein from Oscar Bothner of Leipzig, Germany, with whom he had an exclusive agreement, dated in February 1933, for the importation and sale of similar machines in the United States, which agreement was still in effect; that he (the witness) was the sole selling agent in the United States and Canada for said machines; that he paid the said Bothner $3,300 for the involved machine; that he had freely offered similar machines to all purchasers in the United States during the period from January 1 to September 1, 1934, at the price of $6,000 until June 1, and thereafter at $5,500; that during said period he had made eighteen sales of similar machines; and that the invoices which

he offered in evidence, but which on objection by Government counsel were ordered by the trial judge to be marked Collective Exhibit 1 for identification, covered the sale of machines similar to that covered by the within appeal.

By agreement between counsel, the case was then continued to March 1, 1938. In the meantime, to wit, on February 28, 1938, the case was ordered by Dallinger, Judge, to be transferred to the March 21 Houston docket, reserving the right to the plaintiff to a retransfer to New York.

At the hearing held at Houston on March 21, 1938, before Evans, Judge, Harry Bower, United States examiner of merchandise and acting appraiser at the port of Houston, was called as a witness by the Government. He testified that he based his appraisement of the instant merchandise on the cost of production, for the reason that he could not ascertain whether or not there existed a foreign or an export value thereof; that he obtained his cost of production figures from a Treasury agent's report submitted either in 1934 or 1935, but did not recollect the name of the particular Treasury agent; that to the best of his recollection the cost of materials stated in said report was 5,400 reichsmarks; that the cost of labor was 2,000 reichsmarks; that he did not remember the amount of the general expenses, but that he obtained the said amount, as well as the amount of profit, from said Treasury agent's report.

On redirect examination he testified that he took the cost of production for the basis of his appraisement for the reason that he could not satisfactorily ascertain the foreign or export value.

At the conclusion of this witness' testimony the case was retransferred to New York. At the hearing held at that port on October 18, 1938, the said Ludwig Baer, being recalled, reiterated his testimony given at the first hearing to the effect that he had freely offered to all purchasers in the United States machines similar to the one covered by this appeal, during the period from January 1, 1934, to June 1934, at $6,000 per machine, and from June 1, 1934, to September 1, 1934, at $5,500 per machine.

The plaintiff then offered in evidence Collective Exhibit 1 for identification covering eighteen invoices of sales made by the witness between January 16 and October 22, 1934, which invoices were admitted in evidence as Collective Exhibit 1, over objection interposed by counsel for the Government.

The plaintiff also offered in evidence an invoice covering a sale of a similar machine made on January 7, 1935, to the Stroh Products Co. of Detroit, Mich., which invoice was admitted in evidence as Exhibit 2.

The witness then testified that during the year 1934 he conducted three different businesses, to wit, the importation of beer barrel washing

machinery, the importation of hops, and the sale of domestic malt; that he conducted all three of said businesses at his office at No. 50 Union Square, New York City; that he sold malt to the Fleischmann Importing Co., a subsidiary of Standard Brands, on a commission of 2 cents per bushel; that he made a study of the expenses of his three businesses; that he allocated one-third thereof to the barrel washing machinery business, one-sixth to the hops business, and one-half to the malt business; that in making his sales in his three different businesses during the year 1934, he furnished information regarding the same to Miss Alfreda Frankenberger of his office.

On cross-examination he testified that he did not make this allocation of his expenses at the time they were incurred, but only after his counsel had asked him to do so; that he had the exclusive agency in the United States for the sale of the machines in question; that he had imported them at different ports of the United States; that during the year 1934 he had entered a similar machine at the port of New York upon the basis of the foreign value thereof; that on the invoice of the sale to the Lion Brewery of New York, dated March 29, 1934, there is a notation reading "On account of the occurrence as described in contract, a special discount is allowed of $1640.00"; that the reason for this discount was that the machine in question was a damaged machine; that the reason for the notation on invoice of sale to Adolph Coors Co. of Golden, Colo., "Allowance as per my letter of February 16, 1934, $75.00" was because the services of the witness' supervising engineer were not desired by the purchaser, the latter attending to the erection of the machine; that the reason for the sale of a machine to the F. & M. Schaefer Brewing Co. for $4,500 was that the said machine was damaged to the extent of $1,640; that the same was true of the sale made to the Jacob Schmidt Brewing Co. for $4,500; that in the case of the sale of a machine to the Harry Mitchell Brewing Co. of El Paso, Tex., an allowance of $75 was made for self erection; that in the case of the sale to John H. Hunt & Co., Inc., the purchaser being a dealer, a commission of 5 per centum was allowed; that in the case of invoice dated October 22, 1934, of a sale made on October 4, 1934, to Piel Brothers, Inc., a special reduction of $640 was made for the reason that this particular machine was at the Brewers' Exhibition at Grand Central Palace, and not being sold to anyone else on the premises, the reduction was made to the purchaser who agreed to transport it from the exhibition hall.

At this juncture counsel for the Government sought to introduce a catalog issued by Oscar Bothner, of Leipzig, Germany, in the German language, which was offered as an illustrative exhibit. On objection of counsel for the plaintiff the catalog was not admitted in evidence but was marked "Exhibit 3 for identification."

Being questioned as to the beer barrel washing machine pictured in Exhibit 3 for identification, the witness testified that the machine which was used and sold in Germany was in no way similar to the imported machine at bar, the former being constructed for the washing of wooden barrels, which are the only beer barrels used in Germany, whereas the imported machine is specially constructed and designed for the washing of steel as well as wooden barrels.

The second plaintiff's witness, Alfreda Frankenberger, employed by the plaintiff in the capacity of stenographer and bookkeeper, testified that she had studied bookkeeping at Egan's Business School at Hoboken, N. J.; that in keeping books she had adopted the double entry system for keeping the accounts of the plantiffs; that whenever a sale was made it was entered in the sales book from which it was posted in the ledger; that whenever anything was purchased it was entered in the purchase book and subsequently posted in the ledger; that when a check was made it was entered in the cashbook and subsequently posted in the ledger to the different accounts; and that at the request of counsel she had prepared a memorandum setting forth the purchases and sales made by the plaintiff during 1934, of machines similar to that at bar.

Counsel for the plaintiff then offered the memorandum in question in evidence, but on objection by counsel for the Government it was not admitted under the best evidence rule. It was, however, marked Exhibit 4 for identification, and at the same time a book of accounts of the plaintiff known as the "import book" was marked Exhibit 5 for identification. It developing that all of the pen-and-ink entries in the book were made by the witness at the time, Exhibit 5 for identification was admitted in evidence as Exhibit 5.

Being asked the source from which she obtained the information set forth in Exhibit 4 for identification under the column entitled "duty," and the witness testifying that the source was the bills received from the plaintiff's customs broker, the bills themselves were admitted in evidence as Collective Exhibit 6.

Asked where she obtained the information set forth in Exhibit 4 for identification under the column entitled "insurance," and testifying that it was obtained from the bills received from the plaintiff's insurance broker, the bills themselves were admitted in evidence as Collective Exhibit 7, over the objection of counsel for the Government.

Asked where she obtained the information appearing under the column "sales price—amount received" in Exhibit 4 for identification, the witness testified that the source of her information was the bills already admitted in evidence as Collective Exhibit 1 and the "import book" already admitted in evidence as Exhibit 5.

Asked to explain the notation "Allowance by Insurance Co." appearing in Exhibit 4 for identification, the witness replied that it

represented a refund received from the Phoenix Fidelity Insurance Co. on certain damaged machines.

Asked to explain her source of the information contained in a memorandum prepared by the witness and marked Exhibit 9 for identification, she testified that it was obtained from a book of account giving the sales of malt made by the plaintiff, which book was admitted in evidence as Exhibit 10.

Asked to explain the source of the information in the memorandum marked Exhibit 11 for identification purporting to show the purchase and sale of hops, the witness testified that it was obtained from the plaintiff's general ledger, which was admitted in evidence as Exhibit 12.

Asked the source of her information on which she based her itemizing of the plaintiff's expenses during the year 1934 in his beer barrel washing machine business, hops business, and malt business as set forth in a memorandum marked Exhibit 13 for identification, the witness testified that it was obtained from the ledger admitted in evidence as Exhibit 12, at page 175.

The plaintiff, Ludwig Baer, was then recalled and testified that he was born in Mannheim, Germany; that he made his first trip to the United States in 1904, and has visited this country each year for eight years thereafter; that he received his education in the gymnasium or upper high school; that he established his residence in the United States in 1911 and has resided here ever since; that he studied English in Germany and also in the United States; that he frequently made translations of documents from German into English; that at the request of counsel he had translated an invoice on the letterhead of Oscar Bothner, dated November 28, 1935. Over the objection of counsel for the Government the affidavit of Karl Ernest Dreschler of Leipzig, with accompanying invoice and an English translation of the latter, was admitted in evidence as Collective Exhibit 14.

From said affidavit it appears that the washing machine at bar was of a different construction from that of the only machine sold for export to countries other than the United States during the year 1934, the latter machine being described in the invoice accompanying said affidavit.

At this juncture counsel for the plaintiff offered another affidavit of Karl Ernest Dreschler, which, over objection by counsel for the Government, was admitted in evidence as Exhibit 15. From this affidavit it appears that the automatic keg and barrel washing machines sold for home consumption in Germany are of entirely different construction from the barrel washing machine at bar, the details of said differences in construction being set forth at length in said affidavit.

On cross-examination he testified that Exhibit 13 showed the total expenses of his hops, machine, and malt businesses.

The plaintiff's witness, Alfreda Frankenberger, being recalled, testified that the notation in Exhibit 4 for identification, opposite the figures $4,500 under the column "Sales Price—Amount Received," and the footnote stating "Allowance by Insurance Co., $2589.76" were based upon information obtained from page 28 of Exhibit 12.

On cross-examination the witness testified that in the case of the malt business her employer, Ludwig Baer, was merely the selling agent for the Fleischmann Co., receiving a commission on sales; that this was not true in the case of the hops business; that the item on Exhibit 13 of $3,892 for labor was for compensation of a supervisor who erected the washing machine; that the item of $2,848.61 was for general interest; that the item entitled "dues" was for dues paid to the Manufacturers and Dealers League, Beer Masters' Association, and the Board of Trade, to all of which organizations Ludwig Baer belonged; and that the item of $6,249.68 appearing on page 203 of Exhibit 12 was for stationery, freight, and compensation of an expert accountant.

At the last hearing, held at New York on October 21, 1938, counsel for the plaintiff stated in open court that the plaintiff's ledger, which had been admitted in evidence as Exhibit 12, contained not only entries made during the year 1934, but also entries in all three of the businesses carried on by Ludwig Baer during the years 1935, 1936, 1937, and the current year which was the year 1938. Inasmuch as the ledger was therefore necessary in the conduct of the plaintiff's business, counsel asked that the court order photostatic copies made of all purchases in said ledger containing information relating to the transactions made during the year 1934, the expense of making said copies to be borne by the plaintiff. However, inasmuch as counsel for the Government strenuously objected, the court was obliged, under the rules of evidence, to deny the request of counsel for the plaintiff.

The plaintiff having rested, counsel for the Government moved to dismiss the appeal on the ground that the plaintiff had not established the United States value of the merchandise, and on the further ground that inasmuch as the plaintiff had admitted in his testimony that he had entered similar machines at the port of New York on the basis of foreign value, that he was thereby estopped from attempting to establish United States value for the same kind of machine in the present case.

The Government's motion having been denied by the trial judge, the Government called as a witness Alfred Grass, United States examiner at the port of New York who passed the merchandise covered by entries 809097, 709878, and 729910, which entries were ordered by the court to be marked as Exhibits 16, 17, and 18 for identification, counsel for the plaintiff objecting to their being ad-

mitted in evidence, and the court reserving its decision on the admissibility thereof.

The witness then testified that in all three of said entries he appraised the merchandise as entered on the basis of foreign value. Asked by the court if he knew from his own knowledge that the merchandise covered by said entries was similar in all material respects to the merchandise entered at the port of Houston, the witness replied that he had never seen the merchandise imported at Houston, which is the merchandise at bar.

On cross-examination, the witness testified that he appraised the machine covered by Exhibits 17 and 18 for identification at 9,120 reichsmarks each; that he had appraised six or eight beer washing machines during the year 1934 at 9,120 reichsmarks each.

Counsel for the Government then offered in evidence the special agent's report, dated December 31, 1935, signed by Walter M. Wolff, which, over the objection of counsel for the plaintiff, was admitted in evidence as Exhibit 19.

In this special report there appear the following items under the heading "Cost of Production":

|  | *Reichsmarks* |
|---|---|
| 1. *Cost of Materials Used:* Estimated cost | 5, 400. 00 |
| *Productive Labor:* Estimated cost | 2, 000. 00 |
| 2. *General Overhead Expenses:* Calculated at the rates of 163.1% of productive labor charge or | 3, 262. 00 |
| 3. *Containers, Packing Materials, and Labor:* Estimated expense per unit | 250. 00 |
| 4. *Profit:* No provision of any kind made. |  |
| Total estimated cost as per above | 10, 912. 00 |
| Actual sales price to Ludwig Baer of $3,300.00 equivalent to | 8, 283. 00 |

Before considering the issue involved herein, namely, whether the United States value is to be taken as the proper basis for determining the dutiable value of the merchandise at bar, as claimed by the plaintiff, or the cost of production as taken by the appraiser at the port of Houston, the question of the admissibility of the three entries covering similar barrel washing machines imported by the plaintiff at the port of New York must first be determined. Counsel for the Government contends that said entries should be admitted on the ground that they are admissions against interest. After mature consideration I have decided to admit them as Exhibits 16, 17, and 18, respectively, although I do not consider that they have any real probative value in ascertaining United States value in the instant case.

In my opinion the sole issue to be here determined is the proper dutiable value of a certain machine imported at the port of Houston where the appraiser, who is presumed to have acted in accordance

with law, evidently could find no foreign, export, or United States value for the instant machine, and hence appraised it on the basis of the cost of production, from which action this importer has appealed to this court.

It does not appear from the special agent's report that the figures therein set forth represent the cost of production of the particular barrel washing machine which is represented herein. Moreover, the figures are not of actual, but only of estimated, cost, and there is no evidence in regard to profit, which is one of the essential elements in determining the cost of production under section 402 (f) of the Tariff Act of 1930.

The other figures relating to the cost of production are for machines apparently manufactured during the latter part of the year 1935, and are therefore too remote.

Taken in connection with the other evidence in the record I am of the opinion that the special agent's report has little evidentiary value.

Upon the entire record I find the following facts:

1. That at the time of the exportation thereof there was no foreign-market value for the merchandise at bar, as the barrel washing machines sold for home consumption in Germany, or for exportation to countries other than the United States, were of a different type of construction, and therefore not similar to the barrel washing machine at bar.

2. That at the time of the exportation thereof there was no export value for the machine at bar since all sales for export to the United States were made under an exclusive selling agreement between the manufacturer and the importer herein.

3. That at the time of exportation such or similar machines to that involved herein were freely offered for sale to all purchasers in the United States, a single machine being the usual wholesale quantity.

4. That at the time of exportation the price at which such or similar imported machines were freely offered for sale to all purchasers in the United States in the usual wholesale quantity and in the ordinary course of trade was $5,500 per machine.

5. That the general expenses during the year 1934 in the importation and sale of these machines amounted to 8.97 per centum; that the profit accruing on the sale of said machines amounted to 9.02 per centum; and that the ocean freight on each of said machines amounted to $100.53, and the insurance on each machine amounted to $18.82; and that the customs duty paid on each machine was at the rate of 27½ per centum ad valorem.

On the foregoing facts I hold as a matter of law that the United States value is the proper dutiable basis of appraisement with respect to the particular machine at bar, and that said United States value is $5,500, less the deductions prescribed in section 402 (e) of the Tariff Act of 1930 as follows:

| | |
|---|---:|
| United States selling price | $5, 500. 00 |
| Less 8 per centum general expenses and 8 per centum profit | 880. 00 |
| | 4, 620. 00 |
| Less ocean freight | 100. 53 |
| | 4, 519. 47 |
| Less insurance | 18. 82 |
| | 4, 500. 65 |
| Less customs duties ($4,500.65÷1.275) | 970. 73 |
| United States value and dutiable value | 3, 529. 92 |

Judgment will be rendered accordingly.